UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

MARIE L. BANKS,

                          Plaintiff,

- versus -

HUMAN RESOURCES ADMINISTRATION  
and FOOD & NUTRITION SERVICE,

                          Defendants.

MEMORANDUM  
AND ORDER  
11-CV-2380(JG)

A P P E A R A N C E S:

By:    Marie L. Banks  
        194 Malcolm X Blvd. Apt. B3  
        Brooklyn, New York 11221  
        *Pro Se*

        MICHAEL A. CARDOZO  
        Corporation Counsel of the City of New York  
        100 Church Street, Room 2-121  
        New York, New York 10007  
By:    Jeffrey S. Dantowitz  
        *Attorney for Defendant HRA*

JOHN GLEESON, United States District Judge:

        Plaintiff Marie L. Banks filed this action *pro se* on May 16, 2011, challenging the April 1, 2011 decrease in the food stamp benefits she receives. Defendant, the Human Resource Administration ("HRA")[1], moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted.

BACKGROUND

---

[1] Defendant alleges that the "Food and Nutrition Service" is a division of HRA, and does not enjoy an independent existence.

Banks alleges that "someone is stealing from the Food Stamp Program" and the value of her food stamp benefits has decreased. According to the "Notice of Intent to Change Food Stamps Due to a Mass Change April 1, 2011, NYC" ("April 1, 2011 Notice"), which Banks attaches to her complaint, New York City beneficiaries' food stamp benefits were decreased beginning April 1, 2011. Specifically, the notice informed food stamp recipients that there was a mass change to the Standard Utility Allowances ("SUA") used to figure the amount of food stamp benefits a household receives and therefore they may receive a "DECREASE [in] the amount of food stamp benefits you get." The possible change to food stamp benefits was required "under federal regulation and reflect changes to fuel, utility and heating prices." The notice also explained that the food stamp recipient could request an informal meeting with someone regarding the notice or request a hearing.

In New York City, the Food Stamp Program is administered by the HRA under authority delegated from the New York State Office of Temporary and Disability Assistance ("OTDA").

Under the Supplemental Nutrition Assistance Program ("SNAP"), a household's allotment of food stamps is based on the size of the household and the net income. 7 U.S.C. § 2017(a). Net income is calculated by subtracting the exclusions and deductions to which the household is entitled under SNAP, *see id.* §§ 2014(d) and (e), from the total funds available to the household. The fewer exclusions and deductions a household has, the greater its net income is, and the fewer food stamps it will receive. Among other things, SNAP provides for an "excess shelter expense deduction" which covers a household's shelter expenses that exceed 50% of its income after all exclusions and other applicable deductions are allowed. *Id.* § 2014(e)(6)(A). Shelter expenses include utility costs for heating and cooking fuel, cooling and electricity, water

and sewerage, garbage and trash collection fees and the basic service fee for one telephone. 7 C.F.R. § 273.9(d)(6)(ii).

To save food stamp offices from having to calculate highly variable utility costs on a monthly basis, and to save households from having to submit utility bills each month[2], the United States Department of Agriculture has authorized states to establish standard utility allowances to be used in place of a household's actual utility costs. § 273.9(d)(6); *see also* 7 U.S.C. § 2014(e). For households that can claim the standard utility allowance that figure, rather than actual utility costs, is used in determining eligibility for the excess shelter expense deduction.

I understand Banks' complaint to be that she receives sixteen dollars a month in food stamp benefits, that this is a decrease in the benefits she previously received (because of the change in SUAs)[3], and that she is entitled to her previous food stamp allowance.

DISCUSSION

When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Brod. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). I am mindful that Banks' pleadings should be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[2] *See* 43 Fed.Reg. 18,890 (May 2, 1978) (United States Department of Agriculture's explanation of purposes of standard utility allowance); *see also* 7 C.F.R. § 273.2(f)(8) (without a standard utility allowance, a food stamp household must verify changes in monthly utility costs of $25 or more).
[3] At oral argument, defendant conceded that Banks' benefits were reduced by $19.

3

In addition to the facts set forth in the complaint, I may also consider documents attached thereto and incorporated by reference therein. *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998).

Bank's complaint does not explicitly invoke any particular constitutional provisions. Because I am required to liberally construe plaintiff's *pro se* papers "'to raise the strongest arguments that they suggest,'" *see Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), I construe the complaint as raising a due process claim for damages under 42 U.S.C. § 1983 on the ground that defendant's notice of food stamp benefit reductions did not satisfy the requirements of Due Process Clause of the Fourteenth Amendment.

A. *Banks' Property Interest*

In order to state a valid claim for deprivation of procedural due process, a plaintiff must "demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *Hynes v. Squillance*, 143 F.3d 653, 658 (2d Cir. 1998). Banks has a property interest in the government entitlements that she receives, which is protected by procedural due process. *Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970). She may not be deprived of her food stamp benefits without due process of law. *Id.*

B. *What Process is Due*

The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg,* 397 U.S. at 267. When a deprivation is contemplated, "these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."

4

*Id.* at 267–68. Banks does not allege that she did not receive adequate notice or was denied an opportunity to be heard.

   i. *Notice*

  The April 1, 2011 Notice informed Banks of a possible decrease in her food stamp benefits. HRA maintains that this benefit reduction was a "mass change" resulting in across-the-board adjustments (as distinct from an "adverse action" based on the particular factors of an individual case). Food stamp law, 7 C.F.R. § 273.9(d)(6)(iii)(B), requires annual adjustments to the SUA.

  Under section 273.12(e), a mass change includes "annual and seasonal adjustments to state utility standards." A state agency is not required to send a notice of adverse action when a household's food stamp benefits are reduced or terminated as a result of a mass change. § 273.12(e)(ii); *Atkins v. Parker*, 472 U.S. 115, 126 (1985). In *Atkins,* the Supreme Court held that generalized notice mailed to over 16,000 food-stamp recipients advising them of a change in federal law that might have resulted in either a reduction or a termination of their food stamp benefits did not violate the recipients' procedural due process rights. *Id.* at 117. The Supreme Court reasoned that the recipients were not entitled to advance notice of the statute's "specific impact" on their entitlement to food stamps because their benefits were reduced or terminated based on a "mass change" and did "not concern the procedural fairness of individual eligibility determinations." *Id.* at 127–29.

  When there is a mass change, the agency is required to (1) send individual notices (2) that inform recipients of the change. *Atkins*, 472 U.S. at 126. Here, the April 1, 2011 Notice informed Banks that the adjustments were federally mandated, based on changes to fuel, utility, and heating prices, and permitted by the State regulations. It also provided examples of how

5

different groups of individuals may be impacted, depending on the level of benefits individuals currently receive, and notified Banks of her right to appeal the decision. The notice was adequate to inform Banks of a mass change and afford her an opportunity to present her objections.

    ii.   *Opportunity to be heard*

Public assistance recipients facing an adverse action with regard to their benefits are permitted to present evidence orally and cross-examine adverse witnesses. *See Goldberg*, 397 U.S. at 268. The April 1, 2011 Notice informed Banks of her right to appeal the mass change. She could request a hearing within 90 days from the date of the notice.[4] If Banks wished to challenge the resolution of her application after a fair hearing, she could do so by bringing a proceeding in state court under Article 78 of the New York Civil Practice Law and Rules. *See e.g., Vapne v. Eggleston,* No. 04 Civ. 565, 2004 WL 2754673 at *5 (S.D.N.Y. December 1, 2004) ("Article 78 is routinely the venue in which adverse food stamps determinations are challenged, often successfully."). These opportunies for review provided Banks with a meaningful opportunity to be heard.

Further, Banks does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment.

## CONCLUSION

For the reasons stated above, HRA's motion to dismiss is granted.[5]

                                  So ordered.

---

[4] HRA alleges that Banks exercised her right to a hearing. On October 4, 2012, Banks filed a Supplemental Complaint, ECF No. 21, which attached a "Notice of Fair Hearing," scheduling Banks for a hearing with the OTDA on October 11, 2012. However, the hearing was to address "SNAP failure to report for and/or complete recertification." It does not seem that Banks requested this hearing in order to address the 2011 reduction in her food stamp benefits.

[5] On December 13, 2012 Banks filed a motion, ECF No. 28, requesting the court appoint an attorney to represent her in this matter. Her request is denied.

								John Gleeson, U.S.D.J.
Dated:	January 11, 2013
	Brooklyn, New York